[No. D060478. Fourth Dist., Div. One. Apr. 6, 2012.]

In re B.L., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
S.G. et al., Defendants and Appellants.

Counsel

Cristina Gabrielidis Lechman, under appointment by the Court of Appeal, for Defendant and Appellant S.G.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant Bernardo L.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Neil R. Trop, under appointment by the Court of Appeal, for Minor B.L.

OPINION

AARON, J.—S.G. and Bernardo L. (together, the parents) and their son, B.L., all appeal following the jurisdictional and dispositional hearing in B.L.'s juvenile dependency case. The parents contend that the court erred in denying them reunification services. Additionally, Bernardo contends that the court erred in denying him visitation, and S.G. maintains that the court erred in allowing her only one visit per month. B.L. joins in the parents' contentions. We affirm.

I.

BACKGROUND

A.

*The First Dependency Case*

In early January 2009, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition on behalf of four-year-old B.L. (Welf. & Inst. Code,[1] § 300, subd. (b).) The petition alleged that drug paraphernalia and marijuana had been found in the family home, within B.L.'s reach, that S.G. had a history of substance abuse and that Bernardo admitted having smoked marijuana. Additionally, B.L. had been exposed to violent confrontations between S.G. and Bernardo's uncle. The uncle, who had a gun, had assaulted S.G., causing bruises, and had hit her in

---

[1] All further statutory references are to the Welfare and Institutions Code.

the face. Bernardo was present during the assault, but told S.G. not to call the police because she "would get killed."

In late January 2009, the Agency filed an amended petition that contained additional allegations. The amended petition alleged that B.L. had been exposed to violent confrontations between S.G. and Bernardo. Specifically, Bernardo had punched S.G. several times in the face and arms. S.G. sustained bruising on her arms and an abrasion on her face. Bernardo sustained a small cut under his eye.

B.L. was initially detained at Polinsky Children's Center, and subsequently with the paternal grandfather. In February 2009, the court entered true findings on the amended petition, ordered B.L. placed with a relative and ordered reunification services for the parents. At the 12-month review hearing in May 2010, the court terminated the parents' reunification services and set a section 366.26 hearing. At the section 366.26 hearing in September, the court appointed the paternal grandparents as B.L.'s guardians and terminated dependency jurisdiction.

## B.

### *The Second Dependency Case*

In July 2011, the Agency filed a new dependency petition. (§ 300, subd. (b).) The new petition alleged that at a September 2010 team decision meeting, the paternal grandfather had agreed that visits would be supervised. The parents had attended the meeting. However, after the meeting, the paternal grandparents allowed B.L. to live with the parents. The parents were arrested in July 2011 after police discovered more than 100 marijuana plants, a hydroponic system and marijuana paraphernalia in a room across the hall from the bedroom that B.L. shared with the parents. There was marijuana accessible to B.L. in the bedroom. The parents had drug-related criminal histories.

B.L. was initially detained at Polinsky Children's Center, then in a foster home and finally, with a maternal aunt. At the detention hearing, the court ordered supervised visitation for the parents, consistent with the rules of the facilities where they were incarcerated. The court gave the social worker discretion to allow unsupervised visits, to allow overnight and weekend visits with prior notice to B.L.'s counsel, and to allow 60-day trial visits, with the concurrence of B.L.'s counsel. The court ordered voluntary services for the parents.

In September 2011, the court entered a true finding on the new dependency petition, ordered B.L. removed from the custody of the paternal grandparents

and from the physical custody of the parents (§ 361, subd. (c)), and ordered B.L. placed with a different relative. The court granted the paternal grandparents reunification services but denied services to the parents. The court ordered that S.G. continue to receive supervised visits once a month, allowed her supervised telephonic visits and gave the social worker discretion to expand S.G.'s visitation, if appropriate and feasible. The court denied Bernardo face-to-face visitation while he remained in custody, ordered one supervised visit per month after his release and allowed him one supervised telephone call per month.

## II.

### *The Parents Were Not Entitled to Reunification Services*

The Agency recommended that no reunification services be provided to the parents pursuant to section 361.5, subdivision (b)(10). The court followed the recommendation and based its denial of services on that subdivision. As explained below, section 361.5, subdivision (b)(10), provides an exception to the general entitlement to reunification services set forth in section 361.5, subdivision (a).

Section 361.5 provides: "(a) Except as provided in subdivision (b), . . . whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. . . . [¶] . . . [¶] (b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence . . . [¶] . . . [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian."

The parents contend that section 361.5, subdivision (b)(10), does not apply here because they never had reunification services terminated as to any of B.L.'s siblings or half siblings. Relying on *In re Gabriel K.* (2012) 203 Cal.App.4th 188 [136 Cal.Rptr.3d 813] (*Gabriel K.*), the Agency argues that section 361.5, subdivision (b)(10), applies because the parents' reunification services were terminated as to B.L. in the first dependency case. The court in *Gabriel K.* construed section 361.5, subdivision (b)(10), to authorize the

denial of reunification services to a parent if, in an earlier case *involving the same child*, the court terminated services for that parent and that parent had not subsequently made a reasonable effort to treat the problems that led to the child's removal in the earlier case.

■ We disagree with the *Gabriel K.* court's interpretation of section 361.5, subdivision (b)(10), and decline to follow the holding in that case. The plain language of the statute is limited to cases in which there was a previous "termination of reunification services for any *siblings or half siblings* of the child . . . ." (§ 361.5, subd. (b)(10), italics added.) ■ " '[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs.' " (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129 [13 Cal.Rptr.3d 616].) " 'Appellate courts may not rewrite unambiguous statutes' " or "rewrite the clear language of [a] statute to broaden the statute's application." (*In re David* (2012) 202 Cal.App.4th 675, 682 [135 Cal.Rptr.3d 855].)

■ Although the juvenile court erred in denying reunification services on the basis of section 361.5, subdivision (b)(10), the court's conclusion that the parents were not entitled to reunification services is correct. (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 38 [49 Cal.Rptr.2d 332] ["we review the lower court's ruling, not its reasoning; we may affirm that ruling if it was correct on any ground"].) Section 361.5 authorizes reunification services for parents or guardians *when a child is removed from their custody* pursuant to section 361. (§ 361.5, subd. (a).) ■ As explained below, B.L. was not removed from the parents' custody because the paternal grandparents, not the parents, had custody of B.L., pursuant to the guardianship ordered at the conclusion of the first dependency proceeding. Thus, only the paternal grandparents, as B.L.'s legal guardians, and not the parents, were entitled to receive reunification services pursuant to section 361.5.

■ Section 361 addresses a child's removal "from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated." (§ 361, subd. (c).) "For all practical purposes, when a dependent child is ordered removed from parental custody under section 361," the Agency gains both legal and physical custody of the child. (*In re Robert A.* (1992) 4 Cal.App.4th 174, 184 [5 Cal.Rptr.2d 438]; see also *In re Austin P., supra*, 118 Cal.App.4th at pp. 1130–1131, 1134 ["custody" in § 361.2, subd. (a) means "legal and physical custody"].) Thus, although the statute speaks in terms of a child removed "from the physical custody of his or her parents or guardian or guardians" (§ 361, subd. (c))

"[t]here can be no removal of custody from a parent who does not have custody in the first place" (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 [34 Cal.Rptr.2d 271], superseded by statute on another ground as stated in *In re Nolan W.* (2009) 45 Cal.4th 1217, 1234, fn. 7 [91 Cal.Rptr.3d 140, 203 P.3d 454]). As stated, the paternal grandparents, not the parents, had legal custody of B.L. To conclude that the parents had physical custody of B.L. would allow the parents to benefit from their defiance of the court's order granting the paternal grandparents guardianship of B.L. ■ " 'We will avoid any [statutory] interpretation that would lead to absurd consequences.' " (*In re Austin P., supra,* at p. 1130.)

Bernardo argues that he was entitled to reunification services pursuant to section 366.3, which applies to the termination of a guardianship. However, the trial court did not terminate the guardianship, but rather, modified it. The second dependency case was a section 300 proceeding, not a section 366.3 proceeding. There was thus no requirement that the Agency or the court proceed pursuant to section 366.3 rather than section 300.

The parents have cited no other authority to support their claim of an entitlement to reunification services under the circumstances of this case, and we have discovered none. The court thus did not err in denying the parents reunification services.

### III.

### The Contentions Concerning Visitation Are Moot

The Agency requests that the record on appeal be augmented with a January 27, 2012, minute order. That minute order reflects that the court has ordered liberal, supervised visits for the parents. According to the minute order, the court stated that the visits could take place in the following ways: via Skype; in the town where B.L. was placed, with those visits supervised by approved family members; or in San Diego, with those visits supervised by family members from the town where B.L. was placed. The court ordered that all visits "be in accordance with [B.L.]'s schedule" and that the Agency and the caregivers "make best efforts for [the] parents to visit [B.L.] at least once per week." The parents and B.L. do not oppose the Agency's motion to augment the record on appeal. We grant the motion.

The Agency contends that the January 27, 2012, minute order shows that the challenges to the September 2011 visitation orders are moot. We agree.

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and Irion, J., concurred.