Filed 10/25/13  Watson v. City of Chula Vista CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHARI WATSON, | D061603 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00084066-CU-WT-SC) |
| CITY OF CHULA VISTA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Cannon, Judge.  Affirmed.

Boudreau Williams and Jon R. Williams for Plaintiff and Appellant.

McKenna Long & Aldridge LLP, Charles A. Bird; Procopio, Cory, Hargreaves & Savitch and Phillip L. Kossy for Defendant and Respondent.

I

INTRODUCTION

Shari Watson appeals a judgment entered after the trial court sustained the City of

Chula Vista's (the City) demurrer to her complaint for wrongful termination without

leave to amend. Watson was employed by the City as an assistant to a city council member. When Watson refused to comply with the council member's directive to deposit a check received from Cox Communications (Cox) into what Watson believed was the wrong account, she was terminated for insubordination.

Watson filed this action for wrongful termination under Labor Code[1] section 1102.5, which prohibits an employer from retaliating against an employee for disclosing information regarding illegal activity, or for refusing to participate in illegal activity. In its demurrer, the City contended that depositing the check into the account as instructed by the council member would not have been illegal and, therefore, Watson's termination did not violate section 1102.5. The trial court sustained the demurrer without leave to amend, finding that Watson failed to demonstrate any act of retaliation within the meaning of section 1102.5 because depositing the check as instructed would not have been illegal.

On appeal, Watson argues that the trial court erred in finding that she failed to state a claim for wrongful termination. In the alternative, Watson maintains that the trial court should have granted her leave to amend the complaint. We conclude that the trial court did not err in sustaining the demurrer without leave to amend. Accordingly, we affirm the judgment.

---

1       All statutory references are to the Labor Code unless otherwise specified.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.     *Factual Background*[2]

Watson worked for the City as a part-time council assistant to Councilmember Rudy Ramirez.  Ramirez had founded, and was in charge of, the International Friendship Games (the Games or IFG), an annual athletic competition between young athletes from the United States and Mexico.  One of Watson's duties was to coordinate the 2010 Games for Ramirez.  Watson was responsible for processing checks received from businesses that had agreed to sponsor the event.  Watson would deposit checks received from sponsors into a City account that had been established for the Games [the IFG account], with assistance from the City's finance department.

Ramirez sought to obtain a donation from Cox for the 2010 Games.  Cox initially declined to sponsor the Games.  However, after further contacts by Ramirez and Watson, Cox agreed to donate $1,000.  Cox instructed Watson to complete a set of online forms, and asked that any future donation requests be made online by completing the required forms.

Cox did not make its donation prior to the Games.  Approximately two months after the Games were held, Watson contacted Cox to inquire about the donation.  Cox asked Watson who the check should be made payable to.  Watson instructed Cox to make

---

2     Because Watson's appeal arises from the sustaining of a demurrer, we take the facts from the well-pleaded allegations of the operative complaint.  (*Diamond Multimedia Systems*, *Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1041, fn. 4.)

3

the check payable to "City of Chula Vista/International Friendship Games."  Shortly thereafter, Watson received the check in the mail and deposited it into the IFG account.

About two months later, a staff member from the City's finance department e-mailed Watson to inquire about a new check that the City had received from Cox.  The finance department staff member asked Watson into which account the check should be deposited.  The check was in the amount of $2,400 and was made payable to "City of Chula Vista/International Friendship Games."  Watson was confused because the amount of the check did not match the amount of any of the sponsorship levels for the Games, neither Watson nor Ramirez had begun contacting potential donors for the 2011 Games, and Watson had not requested a new donation from Cox via Cox's online forms.

Watson asked the finance department staff member to hold the check, but indicated that she believed the check might have been sent in error, or that it might be an additional donation for the 2010 Games.  Watson wrote a draft e-mail to her contact at Cox asking for information about the check and submitted the draft to Ramirez for his approval before sending it.  Rather than approving the draft, Ramirez wrote "No.  Deposit check" on the draft, and left a voicemail for Watson asking her to call him when she arrived in her office the following morning.

Watson tried to call Ramirez, but was unable to reach him.  Watson did not deposit the check, based on her suspicion that the check might have been sent in error. That evening, as Watson was driving home, she received a telephone call from Ramirez asking whether she had deposited the check.  Watson told Ramirez that she had not deposited the check and said that she would be uncomfortable doing so because she

4

believed the check might have been sent in error. Ramirez then asked Watson if she intended to resign. Watson replied that she would resign if that was what Ramirez wanted.

Ramirez called Watson again two hours later and told her that she was terminated. Watson contacted the City's mayor, the human resources director, and the city attorney in an apparent attempt to obtain their support, but Watson's termination remained in effect. In discussions with City employees after her termination, Watson said that she had been terminated for refusing to participate in activity that she believed was "unethical." Her complaint does not allege that she told anyone that she believed that depositing the check would have been *illegal*.

After Watson's termination, Cox contacted the City to explain that the $2,400 check was meant to pay the City for Cox's utility bill, and was not intended to be a donation to the Games. The City transferred the funds out of the Games account and into the appropriate account.

B.      *Procedural Background*

After the City denied Watson's claim, filed pursuant to Government Code section 910, Watson filed the instant action.[3] In the operative second amended complaint, Watson alleges two causes of action:  wrongful termination under Labor Code section

_____

[3]      Government Code section 910 is part of the Government Claims Act, which requires that all claims for money or damages against local public entities, such as the City, be presented to the responsible public entity before a lawsuit is filed. (See, e.g., *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734.)  If the claim is rejected by the entity, the party may then file a civil lawsuit. (Gov. Code, § 945.4.)

1102.5, and wrongful termination under Government Code section 12653. On appeal, she challenges the trial court's ruling only as to the first cause of action brought pursuant to Labor Code section 1102.5. Watson's first cause of action generally alleges that she was terminated because she refused to participate in an illegal activity, i.e., depositing the check from Cox into the wrong account.

The City demurred to the second amended complaint on the ground that the pleaded allegations failed to state a claim. After the parties fully briefed the matter, the trial court conducted a hearing and issued an order sustaining the demurrer without leave to amend. The court found that the deposit of the check to the IFG account would not have been illegal because there was no intent to steal, and that depositing the check into the IFG account would not have wrongfully deprived Cox of any property because the check was payment for an amount that Cox actually owed to the City. Watson filed a timely notice of appeal from the resulting judgment.

III

DISCUSSION

A. *Standard of Review*

Watson appeals from a judgment entered following an order sustaining a demurrer to Watson's complaint. When analyzing demurrer rulings, " ' "we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action." ' " (*Czajkowski v. Haskell & White*, *LLP* (2012) 208 Cal.App.4th 166, 173.) We accept properly pleaded facts as true, but not the plaintiff's conclusions of law. (*Ibid.*)

6

B.       *Watson's operative complaint does not contain sufficient facts to state a cause of action for retaliation under section 1102.5, subdivision (b) or (c).*

Watson's wrongful termination cause of action is premised on two subdivisions of section 1102.5.  To state a prima facie case of retaliation under either subdivision, a plaintiff must show that "(1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." (*Patten v. Grant Joint Union High School District* (2005) 134 Cal.App.4th 1378, 1384.)

1.       *Subdivision (b)*

Subdivision (b) of section 1102.5 provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  A report made by the government employee to her own employer is a disclosure under subdivision (b).  (*Id.*, subd. (e).)

The facts alleged in the complaint do not establish that Watson engaged in protected activity under subdivision (b) of section 1102.5 because the complaint fails to allege that Watson *disclosed* any information concerning a violation of a statute, rule or law to the City or to any other government agency that resulted in an adverse employment action.  The only "disclosure" that Watson alleges she made prior to her termination pertaining to the Cox check is her informing council member Ramirez that she believed the $2,400 check might not be intended for the IFG account.  This

7

communication clearly does not constitute protected activity under subdivision (b) since the substance of the disclosure does not concern a "violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." (*Ibid.*)

Watson's other disclosures to the City's mayor, human resources director, and city attorney in which she expressed her view that the deposit of the check was "unethical" were made *after* her termination. Therefore, even if these statements are construed as constituting a disclosure of a violation of statute (i.e., the actual deposit of the check), there is no causal link between those disclosures and an adverse employment action because at the time of any such disclosure, Watson had already been terminated. For these reasons, Watson's complaint fails to state a claim for wrongful termination under section 1102.5, subdivision (b).

2.      *Subdivision (c)*

Section 1102.5, subdivision (c), provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

Watson alleges that the City violated subdivision (c) of section 1102.5 by terminating her based on her refusal to deposit the Cox check into what she believed might be the wrong account. Her principal argument is that regardless of whether depositing the check into the IFG account would have constituted an actual violation of the law, she had a reasonable belief that the deposit would be illegal.

8

Section 1102.5, subdivision (c), provides that an employee may not be terminated for refusing to participate in an activity that "*would result in* a violation . . . ." (Emphasis added.) The language of this subdivision is different from that used in subdivision (b), which proscribes disclosure of information that the employee "*has reasonable cause to believe*" discloses a violation. (§ 1102.5, subd. (b), emphasis added.) Subdivision (a), which is not at issue in this case, also includes the "reasonable cause to believe" language.

Section 1102.5, subdivision (c) is distinct in that it does not include the "reasonable cause to believe" standard. Instead, it states an objective standard: an employee may not be terminated for refusing to participate in an activity *that would result in* an actual violation of law. An employee's subjective belief that the activity is illegal is irrelevant under subdivision (c).

We reach this conclusion by applying the clear and unambiguous words in the statute. " ' "Appellate courts may not rewrite unambiguous statutes" ' " or " 'rewrite the clear language of [a] statute to broaden the statute's application.' [Citation.]" (*In re B.L.* (2012) 204 Cal.App.4th 1111, 1116.) The Legislature's use of the "reasonable belief" standard in two other subdivisions of the same statute, but not in subdivision (c), demonstrates that the difference between the two standards employed is intentional. (See, e.g., *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [when construing a statute, the court must consider portions of the statute in the context of the entire statute of which it is part, giving significance to every word, phrase, sentence and part of an act].)

9

In her briefing on appeal, Watson focuses on demonstrating that her belief that depositing the check into the IFG account would have been illegal, was reasonable. As we have explained, in making this argument, Watson fails to address the applicable standard. What Watson must show under section 1102.5, subdivision (c), is that depositing the check as directed by Councilmember Ramirez would actually have been illegal. Watson has not met this burden.

Watson presents no case law involving a factually similar situation that resulted in criminal charges. Instead, she asks this court to apply two statutes to find that her deposit of the check would have been illegal.

Watson relies primarily on Penal Code section 424, which generally prohibits embezzlement and falsification of accounts by public officers. Culpability under Penal Code section 424 requires actual knowledge of wrongdoing or criminal negligence. (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 400 (*Stark*).) Criminal negligence is a higher degree of negligence than is required in a civil case; the negligence must be " ' "aggravated, culpable, gross, or reckless." ' " (*Id.* at p. 399.) Penal Code section 424 does not hold a public official criminally liable for a "reasonable, good faith mistake" or "good faith errors in judgment." (*Stark*, *supra*, at p. 400.)

Even assuming that a public official's deposit of a check into the wrong account with actual knowledge that the check was intended for a different account would constitute a violation of Penal Code section 424, Watson has not established that the facts alleged in the operative complaint would constitute an actual violation. Watson alleges that Cox's second check in the amount of $2,400 was made payable to "The City of Chula

10

Vista/International Friendship Games." Watson does not claim that she had actual knowledge that Cox's check was intended for any purpose other than sponsorship of the International Friendship Games. As Watson admits, she informed the City's finance department that this was a possibility and that she did not know what Cox intended when it sent the check.

The facts alleged in the complaint also do not establish criminal negligence. One cannot reasonably conclude that a public employee's deposit of a check into the account to which it is made payable would constitute reckless negligence. Watson's mere suspicion that Cox *might* have made an error in writing the check does not establish that the deposit of the check would have constituted a criminal violation of Penal Code section 424.

Watson also relies on Penal Code section 484, the general theft statute. However, criminal liability for theft requires a showing of specific intent to permanently deprive the owner of possession of the property. (See, e.g., *People v. MacArthur* (2006) 142 Cal.App.4th 275, 280.) Again, there is no dispute that (1) Cox knowingly wrote the check to the City with the intent to pay the City an amount that it owed to the City and (2) that the check was made payable to "The City of Chula Vista/International Friendship Games." Given these undisputed facts, Watson has not established that the deposit of the check would have demonstrated a specific intent to steal the funds or that the deposit

11

would have deprived Cox of anything other than an amount that it actually owed to the City.[4]

In summary, under the facts as alleged in the operative complaint, the deposit of a check by a public official into an account to which the check is made payable does not constitute criminal conduct. Therefore, when Watson refused to deposit the check, she was not refusing to participate in activity that would result in a violation of a statute, rule, or regulation. Watson's operative complaint thus fails to state a cause of action for retaliation under section 1102.5, subdivision (c).

C.     *Watson has not demonstrated how she could amend her complaint to cure its defects.*

Watson contends that even if the trial court did not err in finding that her operative complaint failed to state a cause of action, the court abused its discretion in sustaining the City's demurrer without leave to amend. To establish such an abuse of discretion, the plaintiff bears the burden of demonstrating that a reasonable possibility exists that the defect can be cured by amendment. (*Czajkowski v. Haskell & White*, *LLP*, *supra*, 208 Cal.App.4th at p. 173.)

Watson has not met her burden of demonstrating that she could amend the complaint to state a viable cause of action. Her cause of action fails not because of an absence of facts or because her complaint is vague, but because it is premised on a

---

4     Although not dispositive, Watson admits that the error was discovered after she was terminated and that the City moved the funds to the proper account. There is no evidence that any criminal charges arose from the deposit of the check into the Games account.

12

misinterpretation of the applicable statute. As discussed above, Watson must show that she disclosed activity that she reasonably believed to be illegal before she was terminated, or that depositing the check as directed by council member Ramirez would have been illegal. Watson has not suggested any amendment to her complaint that could satisfy either showing, either in the trial court or on appeal. Because her complaint is insufficient as a matter of law rather than a matter of fact, the trial court properly sustained the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.

_____

AARON, J.

WE CONCUR:

_____
McCONNELL, P. J.

_____
McDONALD, J.